## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2015-KA-01413-COA

**DESMON RAY LEE A/K/A DESMON R. LEE**                                       **APPELLANT**
**A/K/A DESMON LEE**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2015 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ATTEMPTED ARMED ROBBERY, AND SENTENCED TO FIFTEEN YEARS; AND COUNT II, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCED TO TEN YEARS, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 01/03/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. On the evening of December 5, 2011, a masked man entered the Little Caesar's Pizza in Southaven and pointed a handgun at Billy Royal, who was working behind the counter at

the time. The stickup man demanded money. For approximately fifteen minutes,[1] Royal argued with the man and refused to surrender the loot. Other employees called the police, and the robber fled the scene as they approached. The first arriving officers spoke to Royal and radioed out a brief description of the robber and the direction he had fled.

¶2. One officer went to the nearby Super 8 Motel, where the manager informed him that a man had just thrown something in the trash can and gone out the back door. The manager said the person was still standing outside behind the building. Another officer arrived and confronted the man, who turned out to be Desmon Lee. Lee admitted he had a weapon, and he was taken into custody. He was read his rights and transported about 400 yards to Little Caesar's, where Royal identified Lee as the masked man who had attempted to rob him a short time earlier. He also identified the weapon taken from Lee as the one used in the robbery. Officers recovered a black and red sweatshirt from a garbage can in the motel lobby, and Lee later confessed that he had tried to rob the restaurant.

¶3. Because of this "show up" identification, Lee moved prior to trial to suppress Royal's identification of him as the perpetrator. At the suppression hearing, Royal testified that he and Lee had actually worked together at Little Caesar's about two years before the robbery, and that he had thought the robber's voice sounded familiar. Royal was "one hundred percent certain" Lee was the robber. The trial court denied the motion to suppress, and Lee

_____

[1] At one point, Royal testified, they were interrupted by a customer who came into the restaurant. Royal served the customer while the robber held him at gunpoint from a place where the customer could not see him.

2

was convicted.

¶4. On appeal, Lee argues that the trial court abused its discretion in denying his motion to suppress the identification.

**DISCUSSION**

¶5. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *abrogated in part by Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *see also York v. State*, 413 So. 2d 1372, 1381 (Miss. 1982). Nonetheless, "[s]uch identification is admissible if, considering the totality of the circumstances surrounding the identification procedure, the identification did not give rise to a very substantial likelihood of misidentification." *Roche v. State*, 913 So. 2d 306, 311 (¶14) (Miss. 2005) (citing *York*, 413 So. 2d at 1383).

¶6. The central question is "whether under the totality of the circumstances the identification was reliable even [though] the confrontation was suggestive." *Outerbridge v. State*, 947 So. 2d 279, 282 (¶9) (Miss. 2006) (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). To evaluate the likelihood of misidentification, the trial court must consider the *Biggers* factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. (quoting *Biggers*, 409 U.S. at 199).

¶7. The trial court in today's case held a hearing and produced an explicit, written analysis of the *Biggers* factors. It found (in relevant part):

> Royal testified as to a lengthy encounter that included close proximity viewing. The encounter lasted for a substantive amount of time with no concerns expressed over conditions such as lighting. Royal had adequate opportunity to pay clear attention to the robber including his appearance and voice. Therefore, Royal testified as to an adequate opportunity to view the assailant while exercising a high degree of attention.
>
> The description given by Royal[] was highly accurate. Although the robber wore a mask, Royal was able to give an accurate description of the clothes being worn by the assailant and physical characteristics of the perpetrator as well as other identifying information. It was ultimately determined that Royal knew Lee from previously working together at the business. During cross examination, Royal admitted that Lee was taller than the description he gave[,] but no evidence was presented as to Lee's actual height. Further, Royal was shown a report of a police officer that stated Royal had given a different description of the clothing to the officer. However, Royal denied making the statement and no further evidence was presented on the subject.
>
> Royal expressed certainty in his description and the length of time between the crime and the confrontation was short. Additionally, upon viewing Lee, Royal recalled that to be the reason he recognized the voice of the perpetrator. He had previously worked with Lee.
>
> The facts in the case are substantially similar to those set forth in *Outerbridge v. State*, 947 So. 2d 279 (Miss. 2006). Such showups have also been upheld in similar circumstances in [further citations omitted].
>
> As in *Outerbridge*, this Court finds beyond a reasonable doubt from a totality of the circumstances that the factual evidence presented in this case does overcome the likelihood of any misidentification of the defendant . . . . [A]ny alleged discrepancies are grounds for cross-examination.

¶8. Appellate courts review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Roberson v. State*, 199 So. 3d 660, 668 (¶32) (Miss. 2016). More

4

specifically, when the admission of a show-up identification is challenged on appeal, we ask "whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." *Roche*, 913 So. 2d at 310 (¶11) (citation omitted).

¶9. Lee contends on appeal that the trial court erred in its analysis because of the rather limited description of the perpetrator initially given by Royal to the police, particularly that Royal had not stated that he recognized the robber's voice or that the robber had "distinctive" facial features perceptible through the mask, as he testified at trial. While the accuracy of the initial description is one factor to be considered under *Biggers*, Lee argues omissions rather than inaccuracies, and the details might have been omitted for the practical reason that they would have been difficult to articulate and of limited use to police in a hot pursuit. Certainly, Lee could have, and did, argue that Royal's limited and imperfect initial description called into question the reliability of his subsequent identification, but we do not find that as a matter of law the trial court was required to find that it gave "rise to a very substantial likelihood of misidentification," especially in light of the strength of the case for admission under the other *Biggers* factors. *See Roche*, 913 So. 2d at 311 (¶14).

¶10. After reviewing the record, we find the trial court's decision to admit the challenged identification testimony into evidence was supported by substantial credible evidence and did not amount to an abuse of discretion. We therefore affirm Lee's convictions and sentences.

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT I, ATTEMPTED ARMED ROBBERY, AND SENTENCE**

OF FIFTEEN YEARS; AND COUNT II, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.

LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.